IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KURT JONES                              :        CIVIL ACTION
[FQ-7321]                               :
                                        :
                                        :
     v.                                 :
                                        :
                                        :
FRANKLIN TENNIS, et al.                 :        NO.  09-760


## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                          October 29, 2009
UNITED STATES MAGISTRATE JUDGE

Presently before this Court is a counseled petition for writ of habeas corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner.  Petitioner is currently incarcerated at State Correctional Institution [SCI] Rockview in Bellefonte, Pennsylvania, where he is serving a life sentence for first-degree murder, a concurrent term of ten (10) to twenty (20) years for aggravated assault, one (1) to two (2) years for recklessly endangering other persons, and two and one-half (2 ½) to five (5) years for possessing an instrument of crime.  For the reasons set forth below, it is recommended that the habeas petition be denied and dismissed without an evidentiary hearing.

### I.  BACKGROUND[1]

The background of this case was set forth by the trial court as follows:

> On September 6, 1999, at approximately 5:00 p.m., Anibal Ocasio and his passenger, Yusuf-Amin Woodruff, drove in a white Grand Am to an apartment complex on 51st Street between Chancellor and Walnut Streets in Philadelphia.   As Mr. Ocasio parked, the

---

[1]In preparing this Report and Recommendation, I have reviewed the following documents: Mr. Jones' habeas petition and memorandum of law in support; the Declaration of Patricia Jones in support of Mr. Jones' petition; the Commonwealth's Response, inclusive of all exhibits thereto; Petitioner's Traverse, and the state court record.

[petitioner] walked up to the passenger side of the car and fired a gun shot into Mr. Woodruff's stomach. The [petitioner] then fired two shots into Mr. Ocasio.

The gunshot split Mr. Woodruff's kidney and liver. He was in the hospital for three weeks. Mr. Ocasio was less fortunate; he died of his injuries.

Commonwealth [witness] Candace Radix was personally acquainted with the [petitioner], having known him for four or five months prior to the murder. At trial, she testified that on the day of the shooting, she saw a white car drive by as she stood on the corner of 51st and Walnut talking to the [petitioner]. She testified that the [petitioner] turned away from her and remarked "It's been a long time since he shot some one." NT 11/5/2003 at 68. Ms. Radix testified that she had only taken her eyes off the [petitioner] briefly when she heard a shot. She turned her head in the direction of the noise, saw the [petitioner] lean into the white car, and fire two more shots. Then, she saw the driver slump down into the seat. Understandably, she left the area immediately. Yusuf-Amin Woodruff, the surviving shooting victim, corroborated her testimony that that the [petitioner] was the shooter.

*Commonwealth v. Jones*, C.P. No. 0212-1200, slip op. at 2-3 (C.C.P. Philadelphia County, March 8, 2004); Commonwealth's Response to Petition for Writ of Habeas Corpus[2], Exhibit A. Following a jury trial before the Honorable Pamela Pryor Dembe of the Philadelphia Court of Common Pleas, Petitioner was convicted of first-degree murder, aggravated assault, recklessly endangering other persons, and possessing an instrument of crime.

On January 14, 2004, Mr. Jones was sentenced to life in prison for the murder conviction, a concurrent term of ten (10) to twenty (20) years' imprisonment for the aggravated assault conviction, a term of two and one-half (2 ½) to five (5) years' imprisonment for the possessing an instrument of crime conviction (to run consecutively to the assault sentence and concurrent to the

---

[2]Hereinafter "Commonwealth's Response".

life sentence), and a term of one (1) to two (2) years' imprisonment for the recklessly endangering

other persons conviction (to run concurrently to the life sentence and consecutively to the assault

conviction).  *Id.*

Petitioner filed a direct appeal to the Pennsylvania Superior Court, raising the following

issues:

> Was the jury's verdict of murder in the 1st degree against the weight
> and sufficiency of the evidence?
>
> Did the trial court err as a matter of law in allowing the
> Commonwealth to exclude African Americans as prospective jurors
> in violation of *Batson v. Kentucky*?
>
> Did the trial court err in permitting prosecutorial misconduct during
> the opening and closing statements made by the Assistant District
> Attorney?

*Commonwealth v. Jones*, No. 221 EDA 2004, slip op. at 3 (Superior Court, December 15, 2004);

Commonwealth's Response, Exhibit B.  On December 15, 2004, the Superior Court affirmed the

judgment of sentence.  *See Commonwealth v. Jones*, 869 A.2d 9 (Pa. Super. 2004) (table).

Mr. Jones did not seek discretionary review in the Supreme Court of Pennsylvania, thus

making his judgment final on January 14, 2005.

On October 14, 2005, Mr. Jones signed and dated a timely *pro se* petition under

Pennsylvania's Post conviction Relief Act, 42 Pa.C.S.A. §9541, *et seq.* (PCRA), and it was filed

with the court on November 7, 2005.[3]  Counsel was appointed to represent Petitioner.  An amended

PCRA petition was filed.  "After careful review of the pleadings, the PCRA Court filed a notice of

---

[3] For purposes of this discussion, under the prison mailbox rule, I will accept the earlier date, October 14, 2005, as the date of filing.  *See Commonwealth v. Little*, 716 A.2d 1287, 1289 ( Pa. Super. 1998) ("the prisoner mailbox rule is applicable to petitions filed pursuant to the PCRA").

intent to dismiss pursuant to Pa.R.Crim.P. 907 on March 5, 2007. . . . The petition was formally

dismissed by an order entered on April 13, 2007." *Commonwealth v. Jones*, C.P. No. 0212-1200,

slip op. at 1-2 (C.C.P. Philadelphia County, June 8, 2007); Commonwealth's Response, Exhibit C.

Petitioner appealed the dismissal of his PCRA petition to the Pennsylvania Superior Court,

raising the following issue:

> Whether the PCRA Court erred by dismissing the [petitioner's]
> petition as frivolous where prior counsel who represented the
> [petitioner] at trial and on appeal was ineffective for failing to
> properly raise and preserve the issue of improper comments made by
> the prosecutor during closing argument thereby depriving the
> [petitioner] of his state and federal constitutional right to a fair trial,
> due process and equal protection under the law?

*Commonwealth v. Jones*, No. 1298 EDA 2007, slip op. at 2-3 (Superior Court, June 3, 2008);

Commonwealth's Response, Exhibit C.  In a June 3, 2008, Opinion, the Superior Court affirmed the

denial of PCRA relief.  *Id.* at 8.

On July 2, 2008, Mr. Jones sought allowance of appeal in the Pennsylvania Supreme Court,

raising one claim:

> The Superior Court erred in holding that the PCRA Court had not
> erred by dismissing the [petitioner's] petition as frivolous where prior
> counsel who represented the [petitioner] at trial and on appeal was
> ineffective for failing to properly raise and preserve the issue of
> improper comments made by the prosecutor during the closing
> argument thereby depriving the [petitioner] of his state and federal
> constitutional right to a fair trial, due process and equal protection
> under the law.

Commonwealth's Response, Exhibit C.  The Court declined review on December 16, 2008.  *See*

*Commonwealth v. Jones*, 962 A.2d 1196 (Pa. 2008) (table).

On February 17, 2009, Mr. Jones signed and dated his habeas petition; it was filed in the

4

Eastern District of Pennsylvania on February 23, 2009.[4]   The claim raised in this petition is "ineffective assistance of counsel".  Petition for Writ of Habeas Corpus[5] at 9.

The Commonwealth denies that Mr. Jones is entitled to federal habeas relief.  It asserts that his claim is without merit.  *See* Commonwealth's Response at 13.

## II.  DISCUSSION[6]

### A.  Exhaustion and Procedural Default

The exhaustion rule, codified in 28 U.S.C. §2254(b)[7], provides that the habeas petitioner must have "exhausted the remedies available in the courts of the State" for all constitutional claims before a federal court shall have habeas corpus jurisdiction.  There are rare circumstances that

---

[4]For the purposes of this discussion, under the prison mailbox rule, I will accept the earlier date, February 17, 2009, as the date of filing.  *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

[5]Hereinafter "Petition".

[6]Neither party discusses the issue of timeliness in regard to the filing of the instant Petition.  Though I am permitted to address this issue *sua sponte*, I choose not to do so.  *See Day v. McDonough*, 547 U.S. 198, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition.").  *See also Strong v. Dragovich*, 2006 WL 1517343 (E.D.Pa. May 31, 2006).

[7]The exhaustion requirements of 28 U.S.C. §2254 provide:

(b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that:

    (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B)(i) there is an absence of available State corrective process or
       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

  (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

  (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirements unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

circumvent this requirement, none of which apply to the case at hand.  To exhaust all remedies for

a claim under 28 U.S.C. §2254, the habeas petitioner must give the state courts a full and fair

opportunity to resolve all federal constitutional claims.  *See Castille v. Peoples*, 489 U.S. 346, 351

(1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  In order for Mr. Jones to give his claim a full

and fair opportunity for resolution, he must have presented both the factual and legal substance in

the state courts through the highest tribunal, the Pennsylvania Superior Court.[8]  The exhaustion

requirement is rooted in considerations of comity; the statute is designed to protect the role of the

state court in enforcement of federal law and to prevent disruption of the state judicial proceedings.

*See Rose v. Lundy*, 102 S.Ct. 1198, 1203 (1982); *Castille*, 109 S.Ct. at 1059 (1989).  The burden is

on the habeas petitioner to establish that he has fairly presented his federal constitutional claims

(both facts and legal theory) to all levels of the state judicial system.  *See Gattis v. Snyder*, 278 F.3d

222, 231 (3d Cir. 2002) (*quoting Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir.

1992), *cert. petition dismissed*, 506 U.S. 1089 (1993), ("[b]oth the legal theory and the facts

underpinning the federal claim must have been presented to the state courts . . . and the same method

of legal analysis must be available in the state court as will be employed in the federal court.")

An unexhausted claim becomes procedurally defaulted when the petitioner has no additional

state remedies available to pursue the issue.  *See Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir.

2001) (when a claim has not been fairly presented to the state courts, but further state-court review

is clearly foreclosed under state law, the claim is procedurally defaulted and may be entertained in

a federal habeas petition only if there is a basis for excusing the procedural default), *cert. denied*, 122

---

[8]Seeking *allocatur* by the Pennsylvania Supreme Court is not part of the standard appeals process.  *See* Pennsylvania Supreme Court *Order No. 218* (May. 2000); *see also Mattis v. Vaughn*, 128 F.Supp.2d 249, 261 (E.D.Pa. 2001); *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

S.Ct. 1364 (2002).

Procedural default also occurs when an issue is properly asserted in the state system but is not addressed on the merits because of an independent and adequate state procedural rule.  *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (1996) and *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) ("If the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.")

A procedural default may be excused if the habeas petitioner can demonstrate "cause" for the default and "prejudice attributable thereto" or demonstrate that the failure to consider his habeas claim will result in a "fundamental miscarriage of justice".  *Wenger*, 266 F.3d at 224 (3d Cir. 2001). *See also McCandless*, 172 F.3d at 260 (3d Cir. 1999).

The Commonwealth does not dispute that Mr. Jones' habeas claim meets the habeas exhaustion requirements.

**B.  Merits**

1.  <u>Standard of Review</u>

Because Mr. Jones' habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA or the Act)[9], the amended habeas standards apply to his claim.  AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable

---

[9]Pub. L. No. 104-132, 110 Stat. 1214, 1219 (1996), effective date April 24, 1996.

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d) (Supp. 1998).

"'[C]early established Federal law' under §2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

In interpreting the above language, the Third Circuit has discussed the appropriate degree of deference which AEDPA requires a federal habeas court to accord a state court's construction of federal constitutional issues and interpretation of Supreme Court precedent.  *See Mattteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.), *cert. denied*, 120 S.Ct. 73 (1999).  The Third Circuit has held that under 28 U.S.C. §2254(d)(1), a two-step inquiry is warranted.  The majority agreed:

> First, the federal habeas court must determine whether the state court decision was contrary to Supreme Court precedent that governs the petitioner's claim.  Relief is appropriate only if the petitioner shows that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.  In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an unreasonable application of Supreme Court precedent: that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

*Matteo*, 171 F.3d at 891 (3d Cir. 1999) (internal quotations and citations omitted).

The United States Supreme Court has set forth the scope of habeas review after AEDPA. *See Williams v. Taylor*, 120 S.Ct. 1495, 529 U.S. 362 (2000).  According to the *Williams* majority:

> We [the Supreme Court Justices] all agree that state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated. . . .

8

> In sum, the [AEDPA] statute directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state-court's judgment, a federal court is convinced that a prisoner's custody - or, as in this case, his sentence of death - violated the constitution, that independent judgment should prevail.

*Id.* at 389.

Under AEDPA, a federal reviewing court must presume that factual findings of state trial and appellate courts are correct. The presumption of correctness may only be overcome on the basis of clear and convincing evidence to the contrary. *See Stevens v. Delaware Correctional Center, et al.*, 295 F.3d 361, 368 (3d Cir. 2002).

2. Ineffective Assistance of Counsel Claim

Mr. Jones alleges that his trial counsel was ineffective for a variety of reasons:

> Trial counsel failed to object to prosecition's [*sic*] closing argument which made repeated references to facts not in evidence[.] Trial counsel did not conduct a reasonable pretrial investigation. He did not have alibi witnesses interviewed until eve of trial. He did not subpoean[*sic*] alibi witnesses. Even so, during closing argument, prosecutor claimed without evidence that defense attorney was a fine lawyer and sincere and would have investigated alibi defense if he were told theer[*sic*] was such a defense. Prosecution made other refrences[*sic*] to facts not in evidence inclusing[*sic*] testimony from a detective not present that the petitioner tried to escape down a fire escape. The prosecutor stated that if petitioner suboenaed[*sic*] witnesses they would have to come, failing to tell the jury that the witnesses were out of state and not easily subpoenaed. Prosecutor disparaged petitioner's presumption of innocence by telling jury that he had a vital interest in the outcome of the case. This was a close case. Superior Court decision was contrary to Strickland because it did not consider the totality of the evidence and the totality of the circumstance in ruling that the prosecutor's argument was not a denial of due to the point where counsel should have objected and requested a mistrial.

Petition at 9.  The issue of the appropriateness of the prosecutor's closing argument was raised by Petitioner in his PCRA proceedings, as well as on direct appeal; however, it was raised as court error, not as ineffective assistance of counsel.  Nonetheless, I will give Petitioner the benefit of the doubt and deem the underlying claim of ineffective assistance of counsel the actual issue he wished to address throughout the state court proceedings.

In order for a petitioner to establish ineffective assistance of counsel under the federal *Strickland* standard, he must show: [1] that counsel's performance was "deficient" and [2] that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To demonstrate that counsel's performance was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness based on the facts of the particular case, viewed as of the time of counsel's conduct.  *See Senk v. Zimmerman*, 886 F.2d 611, 615 (3d Cir. 1989) (*quoting Strickland*, 466 U.S. at 688, 690 (1984)).

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for unprofessional errors, the result would have been different.  The standard is less strict than the "more likely than not" standard.  *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992), *cert. denied*, 507 U.S. 954 (1993).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 358 (*quoting Strickland*, 466 U.S. at 694 (1984)).

As the Supreme Court has prescribed a rule which governs Mr. Jones' ineffective assistance of counsel claim, the *Strickland* standard "shape[s] the contours of an appropriate analysis of a claim of constitutional error to merit review of a state court's decision under section 2254(d)(1)'s 'contrary to' prong."  *Matteo*, 171 F.3d at 886 (3d Cir. 1999).

The offending portion of the prosecutor's closing argument reads as follows:

MR. CAMERON: . . . Let's talk briefly about the alibi in this case, and I'm not going to spend a lot of time on that because I don't think it should be worth your time either. Simple thing, did people agree with each other in terms of what was said? Did the wife tell him about the cops coming or not? He says yes. She says no. When did he go up? What did you tell your lawyer? I think you saw Mr. Dolfman. He's a fine attorney and he's sincere in what he does. Absolutely if when you watched him close, do you think for a minute that if his client told him that there was an alibi in this case, we would have just heard about it last week when we started picking you folks on the jury? Nonsense. We would have known about that.

Do you really believe that his stepfather isn't here because he had to go to work, that his sisters aren't here because they had to go to work? There's something called a subpoena. They have to come. Work has to let you go. Maybe they are not here because they don't know where the heck he was either. Something else that struck me as kind of odd and, again, it's not Mr. Dolfman, his own alibi witness said, that being the wife, the common-law wife. I was interviewed by a defense investigator. I didn't sign it, but I gave a written statement. I wonder where the heck that statement is. Is it because what she had to say didn't fit with what mom had to say and maybe we don't want to see that or did she lie when she said she gave the statement? It's one or the other.

Did you believe what the [petitioner] had to say? When you consider his credibility, I believe the Judge will tell you you can consider that a [petitioner] has a vital interest in the outcome of the case. It doesn't mean that he lies, but his life is on the line here. It's like if you go to buy a car, folks. I mean, you listen to that salesman, you know he's trying to sell you a bill of goods, doesn't mean he's lying, but if he told you this car was owned by a little old lady and left it in the garage and drove it only to church on Sunday, you got to kind of wonder about that. Do you think that's really true? Something that just crossed my mind when he's testifying, is he telling the truth? Well, you're delivering papers seven days a week, three hundred sixty-five days - how could he go to New York on one holiday? Maybe somebody else was delivering his papers. Do you think it's just coincidental that he happened to sell his Ford Taurus and it's found in the 5100 block of Chancellor Street a few days after that on September 11th? Do you really think? I mean, he called his mother a liar on the stand. His mom said when the police came, he was hiding behind the couch the first time. What does he say? Oh no, no,

I was standing behind the couch.

You heard Detective Cahill when the detectives, the officers went in there.  He tried to run down the fire escape to get the heck out of there.  He says it never happened.  Everybody lying in this case but him, if you were to believe him.

Do you really believe for a minute that his wife, that his mother, if they knew where he was that day wouldn't have told the authorities that he spent three months in jail in the year 2000 into 2001, only out of custody, because of a snow storm that the governor's warrant not getting up there, that they wouldn't have told anybody?  Isn't it just coincidental that he disappeared immediately after he got out of jail on that?  Listen to the Judge talking to you about flight.  Under the law, there's a concept called consciousness of guilt and in my terms, it's where there's smoke, there's fire is another way to look at it.

N.T. 11/7/03 at 108-110.

Upon Mr. Jones' direct appeal, the Pennsylvania Superior Court declined to address the issue involving the prosecutor's closing argument, finding it waived.  However, should the Court have decided to address the claim, it would have determined it to be meritless.[10]

---

[10]The Superior Court of Pennsylvania opined:

Finally, [Petitioner] presents two issues of alleged error in the Commonwealth's closing argument.  First, [Petitioner] argues the prosecutor should not have referred to the alleged threat [Petitioner] made to Ms. Radix.  Second, [Petitioner] avers the Commonwealth should not have attempted to discredit [Petitioner's] alibi defense. Specifically, [Petitioner] contends the prosecutor's reference to the absence of certain alibi witnesses was inappropriate.  [Petitioner] concludes the Commonwealth's actions in these two instances constituted prosecutorial misconduct.  We decline to address this issue.

[Petitioner's] prosecutorial misconduct claim is waived for failing to raise it at trial. . . .
. . . . .
Moreover, were we to address [Petitioner's] claims, we would determine them to be meritless.  The prosecutor did not act improperly by highlighting [Petitioner's] attempt to interfere with a witness or by responding to [Petitioner's] alibi defense.

*Commonwealth v. Jones*, No. 221 EDA 2004, slip op. at 6-7 (Superior Court, December 15, 2004); Commonwealth's

12

When the question of trial counsel's alleged ineffectiveness regarding the prosecutor's closing argument was raised in the PCRA forum, the PCRA court found no merit to the allegations.

A review of the record in the instant case shows that the [petitioner] has raised a meritless claim. The facts may be summarized as follows: On September 6, 1999, at approximately 5:00 p.m., Anibal Ocasio and his passenger, Yusuf-Amin Woodruff, drove to an apartment complex on 51st Street between Chancellor and Walnut Streets in Philadelphia. As Mr. Ocasio parked, the [petitioner] walked up to the passenger side of the car and fired a gun shot into Mr. Woodruff's stomach. The [petitioner] then fired two shots into Mr. Ocasio.

The gunshot split Mr. Woodruff's kidney and liver. He was in the hospital for three weeks. Mr. Ocasio was less fortunate; he died of his injuries.

The Commonwealth presented several eyewitnesses to the shooting. The [petitioner] raised an alibi defense, testified, and presented his mother and common law wife as alibi witnesses. They said that he was with family and friends in New York on the day of the shooting. (NT 11/6/03 at 100-105, 130-140.]

During closing arguments, defense counsel argued to the jury that the defense witnesses were more credible than the Commonwealth witnesses, and highlighted the absence of any physical evidence to tie the [petitioner] to the crime. [N.T. 11/7/03 at 75-77.] The portion of the prosecutor's argument that the [petitioner] contends deprived him of a fair trial [N.T. 11/7/03 at 108-111] was made in direct response to defense counsel's arguments. The prosecutor did not express his person[al] belief; he simply argued that the Commonwealth witnesses were more credible than the defense witnesses, and pointed out that the jury should question [petitioner's] stated reason why the [petitioner's] father and other family members did not appear at trial as alibi witnesses. [N.T. 11/7/03 at 108-110].

. . . . .

In order for trial or appellate counsel to be deemed ineffective for failing to object or request a cautionary instruction due to the prosecutor's misconduct, the defendant must show that the prosecutor was, in fact, engaging in misconduct. . . . Since the prosecutor's

_____

Response, Exhibit B.

13

comments in the instant case were fair argument, they did not amount to prosecutorial misconduct. Therefore, the [petitioner] has not sustained his burden of proof. . .

*Commonwealth v. Jones*, C.P. No. 0212-1200, slip op. at 3-5 (C.C.P. Philadelphia County, June 8, 2007); Commonwealth's Response, Exhibit C.

Upon appeal of that decision, the Superior Court of Pennsylvania agreed:

Upon review, we conclude that [Petitioner's] underlying claim [of prosecutorial misconduct] lacks merit. In disposing of [Petitioner's] direct appeal, a prior panel of this Court determined that his claim of prosecutorial misconduct was waived. *Jones,* 869 A.2d 9 (unpublished memorandum at 7). However, the panel continued:

Moreover, were we to address [Petitioner's] claims, we would determine them to be meritless. The prosecutor did not act improperly by highlighting [Petitioner's] attempt to interfere with a witness or by responding to [Petitioner's] alibi defense. *See Commonwealth v. Davis*, [861 A.2d 310, 326 (Pa. Super. 2004)] (stating prosecutor can respond to defense arguments and present case with force); *Commonwealth v. Johnson*, 576 Pa. 23, 51-52, 838 A.2d 663, 680 (2003) (stating defendant's attempt to interfere with witness testimony long recognized as admissible to show consciousness of guilt). Thus, [Petitioner] has failed to establish an abuse of discretion by the trial court in admitting these statements, or the resulting prejudice necessary to support either of his allegations of prosecutorial misconduct. *See Commonwealth v. Wesley*, 562 Pa. 7, 16, 753 A.2d 204, 209 (2000) (stating standard of review for prosecutorial misconduct claims is abuse of discretion and prosecutor's comments generally not reversible error unless their unavoidable effect would be to prejudice jury).

*Jones*, (unpublished memorandum at 7-8).

We are in agreement with the prior panel. Nothing in the Commonwealth's closing prejudiced the jurors and formed in their

14

minds a fixed bias and hostility toward [Petitioner] that prevented them from weighing the evidence objectively and rendering a true verdict. The comments made by the Commonwealth in closing pointed out inconsistencies in [Petitioner's] defense and asked the jurors to make credibility determinations. Pursuant to our standard of review, we conclude that such comments fall short of prosecutorial misconduct.

As [Petitioner] has failed to establish that the underlying claim in his PCRA petition possessed arguable merit, he is entitled to no relief.

*Commonwealth v. Jones,* No. 1298 EDA 2007, slip op. at 7-8 (Superior Court, June 3, 2008).

I agree with the Pennsylvania Superior Court that trial counsel was not ineffective for failing to object to the prosecutor's closing argument. As the prosecutor's comments were not improper, trial counsel cannot be found ineffective for failing to object to them. The state court's resolution of the issue was not contrary to, nor an unreasonable application of federal law. Petitioner is not entitled to federal habeas relief on this claim.

## <u>RECOMMENDATION</u>

For the reasons stated above, it is recommended that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING. It is further recommended that a finding be made that there is no probable cause to issue a certificate of appealability.

BY THE COURT:


  S/M. FAITH ANGELL_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

15

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**Robert N. C. Nix, Sr. Federal Building, S/211**
**900 Market Street**
**PHILADELPHIA, PENNSYLVANIA  19107**

**Chambers of**
**M. FAITH ANGELL**                                          P:  **(215) 597-6079**
**United States Magistrate Judge**                           F:  **(215) 580-2165**
                                    *FAX / MAIL COVER SHEET*

**CASE NO:    09-760**                                   **DISTRICT COURT JUDGE: BS**

**TODAY'S DATE**:    October 29, 2009                    **LAW CLERK'S INITIALS**:LFS

**VIA FAX;**

**NAME:**                                                **FAX NUMBER:**

1.      Cheryl J. Sturm, Esq.                            (484) 771-2008

2.      John W. Goldsborough, ADA                        (215) 686-5725